UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HYWON REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 14-2972-JDT-tmp |
| ) | |
| DERRICK SCHOFIELD, ET AL., ) | |
| ) | |
| Defendants. ) | |

ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS

On December 11, 2014, Plaintiff Hywon Reed, ("Reed"), Tennessee Department of Correction ("TDOC") prisoner number 434322, who is presently confined at the Northeast Correctional Complex in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On December 12, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as TDOC Commissioner Derrick Schofield; TDOC Deputy Commissioner Jason Woodall; Bill Smith, the Classification Coordinator at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee; Jerry Lester, the former Warden of the West Tennessee State Penitentiary ("WTSP") in

Henning, Tennessee; WTSP Deputy Warden Stanley Dickerson; WTSP Associate Warden for Security Robert Henry; WTSP Associate Warden for Operations Charles Sweat; and WTSP Corrections Officer First Name Unknown ("FNU") Phillips. The Defendants are sued in both their individual and official capacities. (Compl. ¶ 12, ECF No. 1 at 4.)

## I. The Complaint

Reed is a homosexual inmate who exhibits feminine characteristics. (*Id.* ¶ 47, at 12.) On or about May 21, 2012, Reed's probation was revoked and he was sentenced to serve the remainder of his ten-year sentence in TDOC custody. (*Id.* ¶ 13, at 4.) Before Reed was transferred to TDOC custody, the District Attorney General sent a letter to Defendant Schofield advising that Reed might face a substantial risk of harm were he to be housed in the general population. (*Id.* ¶¶ 14-15.) Between September 14, 2012 and April 9, 2013, Reed was assigned to the WTSP and placed in the general population. During intake at the WTSP, Plaintiff informed prison officials of the risk he faced in the general population. (*Id.* ¶ 16, at 4-5.) While he was assigned to the general population, Reed was "threaten[ed], assaulted and sexually harassed by staff and inmates . . . ." (*Id.* ¶ 17, at 5.) Reed informed prison officials about his problems on a daily basis. (*Id.*) However, Reed's requests for protective custody were denied, and he was told by an unspecified official that he would have to deal with his problems "like other gays." (*Id.* ¶ 18.)

On February 18, 2013, Reed was reclassified to the Charles B. Bass Correctional Complex ("CBCX") in Nashville, Tennessee. (*Id.* ¶ 19.) On May 17, 2013, Reed was assaulted by another inmate who had been threatening and sexually harassing him. Reed was placed in segregation for fighting after the assault. (*Id.* ¶ 20.) On June 3, 2013, when Reed completed his

time in punitive segregation, he was transferred to administrative segregation. (*Id.* ¶ 21, at 5-6.) That housing assignment was made after an unidentified prison official told Reed that they were unable to prevent openly gay inmates from being targeted for harmed by other inmates and staff. (*Id.*) Reed filed a grievance that alleged he had been discriminated against and, as a result, he was transferred to the RMSI and placed in unit one, which houses maximum and super-maximum security inmates. (*Id.* ¶ 22, at 6.) After questioning his placement at the RMSI, Reed was housed in protective custody and, later, in a low-security unit. (*Id.* ¶ 23.) The complaint alleges that Smith told Reed that he was not eligible for those placements. (*Id.*)

On September 19, 2013, Defendant Smith allegedly transferred Reed to the WTSP even though Reed had advised Smith that he faced a high risk of harm at the WTSP. Smith allegedly replied that he did not care and that his job was to place Reed in a bed. (*Id.* ¶¶ 24-25.)

On September 20, 2013, Reed was housed with inmate Jarrett Siebert, who had previously assaulted other inmates and staff members at the WTSP. (*Id.* ¶ 26, at 6-7.) On October 22, 2013, Siebert allegedly threatened Reed with a shank, a homemade knife. Reed told Defendant Phillips that Siebert had threatened to kill him and requested an emergency cell change. Reed was moved later that same night. (*Id.* ¶ 27, at 7.)

On November 15, 2013, Defendant Phillips allegedly let Siebert into the pod in which Reed was housed. Siebert attacked Reed with a shank, and Reed was able to fight off the attack and remove the shank from Siebert's hands. (*Id.* ¶ 28.) Reed was taken to the operations office and questioned by Defendants Dickerson and Sweat and by non-parties Warden Henry and Captain Jerry Mooney. Mooney allegedly said, in the hearing of everyone who was present, that Siebert was dangerous and would try to kill Reed if given the chance. (*Id.* ¶ 29.) Reed asked the

wardens not to allow Siebert around him again, "[b]ut they keep asking if we were lover." (*Id.* ¶ 30, at 7-8.)

Between November 15, 2013 and November 26, 2013, Reed asked Sergeant Dustin Chumley and Sergeant Mitchell, neither of whom is a party to this action, to keep Siebert away from him. Reed filed incompatible inmate notices with Defendant Smith and with Counselor Paul Jones, who also is not a party to this action. (*Id.* ¶ 31, at 8.)

On November 26, 2013, Reed was returned to Unit 11, Pod A. Siebert was placed on Site 2, Unit 4. Reed asked Defendant Phillips to check whether the incompatible notification had been posted on TOMIS. Reed also asked Capt. Mooney to make sure the incompatible had posted. (*Id.* ¶ 32.) Between about November 29, 2013 and December 7, 2013, Reed made daily requests that he have no contact with Siebert. Reed also wrote Defendant Dickerson about Siebert's threats and the attack with a shank. (*Id.* ¶ 33.)

On December 7, 2013, Defendant Phillips transferred Siebert to the same unit as Reed but a different pod; she was allegedly paid $200 to do so by Seibert's gang. (*Id.* ¶ 34, at 8-9.) On that same day, Reed was attacked by Siebert and two other inmates who stabbed Reed in the face, head, side chest and hand. (*Id.* ¶ 35, at 9.) At no time did the pod officers in the unit core try to stop the assault on Reed. (*Id.* ¶ 36.) While Reed was being transported to the medical unit, the officer allowed inmate Demario McKay to approach Reed and start assaulting him again; no officer in the secure unit intervened to stop Reed from being further assaulted. (*Id.* ¶ 37.) When he arrived in the medical unit, Reed was refused medical care after being told that his injuries were not life-threatening and that he was the cause of his own injuries and "needed to suffer for acting like a girl in the penitentiary." (*Id.* ¶ 38.)

4

From December 7, 2013 to December 12, 2013, Reed was placed in isolation without medical care for his open stab wounds and broken finger. (*Id.* ¶ 39, at 10.) From December 7, 2013, to February 4, 2014, Reed was forced to plead guilty to false charges and was unable to use the phone or mail to contact an attorney. (*Id.* ¶ 40.) Reed continues to face violence due to his feminine propensities. (*Id.* ¶ 41.) Reed further states that on February 22, 2014, he filed a grievance providing the facts in this complaint. (*Id.* ¶ 42.) Reed's grievance and appeal were denied. (*Id.* ¶¶ 42-43, at 10-11.)[1]

Reed seeks money damages and a jury trial on all issues. (*Id.* ¶¶ 57-61, at 16-17.)

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>  (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>  (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly

---

[1] Although Plaintiff states that Warden Henry's response to the grievance is attached to the complaint (*id.* ¶ 43, at 11), no such document was included.

5

suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Reed*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Reed v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Reed filed his seventeen-page, handwritten complaint under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

7

> person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendants Woodall and Lester. The only statements in the complaint regarding Defendants Woodall and Lester are conclusory and are supported by no factual allegations against either defendant. (Compl. ¶¶ 48, 51, ECF No. 1 at 12-14.) When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

All of the Defendant are employed by the TDOC, a department of the State of Tennessee; therefore, Reed's claims against the Defendants in their official capacities are brought against the State of Tennessee.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The

Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the claims against Defendants in their official capacity are barred by Eleventh Amendment's grant of sovereign immunity.

It is clear that Reed sues Defendant Schfield merely because of his position as TDOC Commissioner. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

9

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). While the complaint does state that Schofield received a letter of warning regarding Reed's safety, it does not allege that Defendant Schofield, through his own actions, violated Reed's rights.

Although Reed alleges that he has been discriminated against, he does not have a valid equal protection claim against any Defendant. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Most Equal Protection claims "allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks and citation omitted). The complaint does not allege that Plaintiff is a member of a protected class.[2] That Plaintiff may have been treated differently than other prisoners is insufficient to state a claim because prisoners

---

[2] Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right. This case does not involve the exercise of a fundamental right.

10

are not a protected class for equal protection purposes. *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005); *Berry v. Traughber*, 48 F. App'x 483, 485 (6th Cir. 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Heddleston v. Mack*, No. 00-1310, 2000 WL 1800576, at *2 (6th Cir. Nov. 30, 2000) ("prisoners incarcerated at the same institution as Heddleston who wished to mail items weighing more than one pound on January 9, 1999, do not constitute a protected class"); *Aldred v. Marshcke*, No. 98-2169, 1999 WL 1336105, at *1 (6th Cir. Dec. 20, 1999); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999); *Preston v. Hughes*, No. 97-6507, 1999 WL 107970, at *1 (6th Cir. Feb. 10, 1999); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) ("neither indigents nor prisoners are a suspect class"); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

Reed's conclusory statements that inmates "known as "Girls," have faced a history of discrimination is not sufficient to state an equal protection claim. *See Lee v. Willey*, No. CIV.A. 10-12625, 2012 WL 4009629, at *11 (E.D. Mich. Aug. 10, 2012), *report and recommendation adopted*, 2012 WL 4009766 (E.D. Mich. Sept. 12, 2012) ("Plaintiff's allegations on this point are wholly conclusory. Plaintiff merely states that he is being treated differently because he is homosexual. Plaintiff provides no specific factual allegations to support his contention. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.")

> This also is not an appropriate case for a "class of one" Equal Protection claim.
>
> The purpose of [the Equal Protection Clause] is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its

11

> improper execution through duly constituted agents. . . . Equal protection challenges are "typically . . . concerned with governmental classifications that affect some groups of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (internal quotation marks and citation omitted). However, the Supreme Court has recognized that a "class-of-one" may bring an equal protection claim where the plaintiff alleges that: (1) he or "she has been intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

*United States v. Green*, 654 F.3d 657, 650-51 (6th Cir. 2011) (additional internal quotation marks and citation omitted), *cert. denied*, 132 S. Ct. 1056 (2012); *see also Davis v. Prison Health Servs.,* 679 F.3d 433, 441 (6th Cir. 2012) (distinguishing "class of one" claims from other equal protection claims evaluated under the rational basis standard).

The complaint does not allege that Reed was arbitrarily treated differently than similarly situated prisoners at the jail or that he has a valid claim for a "class of one."

Reed claims that Defendants failed to protect him from his fellow inmate. For a convicted prisoner such as Plaintiff, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 633 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; see also *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); see also *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 833); see also *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 512 (6th Cir. 2001). To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

13

> the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). To show that a corrections officer was deliberately indifferent to the risk that an inmate would be assaulted by another inmate, there must be a showing that the assault was "reasonably preventable." *Dellis*, 257 F.3d at 512 (citing *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)). The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also* I*d.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

For purposes of screening, Reed has alleged a plausible claim for violation of the Eighth Amendment against Defendants Smith, Dickerson, Sweat, Henry and Phillips.

### III. Conclusion

The Court DISMISSES Reed's claims against all of the Defendants in their official capacities pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). The claims against Defendants Schofield, Woodall and Lester in their individual capacities

are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Smith, Dickerson, Sweat, Henry and Phillips on Reed's Eighth Amendment claim for failure to protect him from harm.

It is ORDERED that the Clerk shall issue process for Defendants Smith, Dickerson, Sweat, Henry and Phillips and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Smith, Dickerson, Sweat, Henry and Phillips pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Reed shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Smith, Dickerson, Sweat, Henry and Phillips or on any unrepresented Defendant. Reed shall make a certificate of service on every document filed. Reed shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[3]

Reed shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[3] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.